## Case No. 13,261.

### SPRING v. RUSSELL.

[1 Lowell, 258; [1] 8 Int. Rev. Rec. 193.]

Circuit Court, D. Massachusetts. May Term. 1868.

CUSTOMS DUTIES — PORT OF ENTRY — RESHIPMENT TO ANOTHER PORT — APPRAISEMENT — ADDITION TO INVOICE VALUE.

1. Where goods are imported into a port of entry and warehoused there, and are intended to be and are transported to another port, in bond for rewarehousing, the entry is to be completed at the former port, and it is the duty of the collector of that port to have the goods properly examined, and if they are invoiced too low by more than ten per cent, to assess and levy the penal duty.

2. The collector of the second port has no authority to levy the penal duty on such goods by virtue of a new appraisement made under his own direction.

3. Articles 460 and 463 of the general regulations require a report to the treasury department in such cases, but there appears to be no law or regulation which authorizes a new levy of duties.

[Cited in Saltonstall v. Russell, 152 U. S. 628, 14 Sup. Ct. 734.]

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

4. Nor can the collector at the original port of entry make an addition to the invoice value, upon mere hearsay information derived from the collector at the second port, and without notice to the importer, and after the goods have left the first port.

5. At a port where there are no appraisers, a deputy-collector may examine goods entered for warehousing, to ascertain their dutiable value, as well as the collector.

The plaintiff [Charles Spring] bought 1,000 barrels of flour at Toronto, Canada, in March, 1867, and in April sold the same to J. G. Hall & Co. for exportation, both parties residing in Boston. In May, 1867, 237 barrels of this flour were shipped from Toronto for Boston, and entered at the port of Ogdensburg by a clerk of the railroad company in behalf of the plaintiff, who was not in fact aware of their arrival, and were forwarded to Boston in bond. There were no appraisers at Ogdensburg, and one of the deputy-collectors examined the flour and exhibited samples to competent judges, and being of opinion that the invoice value was correct, permitted it to be shipped. The business was conducted in the mode usual at that port. The officer did not certify his appraisement on the invoice, but the value and estimate of duties contained in the entry was the same as that in the invoice, and this was passed and the duties were estimated accordingly. The plaintiff entered the flour for re-warehousing at Boston, and before he did so asked leave to make an addition to the invoice value, but was told by the entry clerk, to whom persons usually apply for information in such matters, that he could not do so. J. G. Hall & Co., the purchasers of the flour withdrew and exported at different times all but sixty-three barrels, and these sixty-three were then sent to the appraisers in Boston, who found the value in the invoice too low by more than ten per cent. The defendant, who is the collector at Boston, then sent back to Ogdensburg the copies of the entry and invoice with the additions made by the appraisers here, and a deputy collector there, other than he who had made the original examination of the goods, assented to the additions, and noted them on the original invoice and returned the copies to the defendant [Thomas Russell], who thereupon levied and collected a penal duty of twenty per cent ad valorem on the whole 237 barrels, and refused to deliver the sixty-three barrels, then in his custody, until this sum was paid. Payment was made by the plaintiff under a protest in due form. No fraud was shown in any thing connected with the importation.

M. E. Ingalls, for plaintiff.
W. A. Field, for defendant.

LOWELL, District Judge. Transportation of goods duly warehoused at one port of entry to another port of entry in the United States to be again deposited in warehouse is authorized by section 2 of chapter 84 of the Laws of 1846 (9 Stat. 54), and section 5 of chapter 30 of the Laws of 1854 (10 Stat. 272), and is further regulated by Gen. Reg. Treas. Dep. (1857), arts. 432–472. From these acts and regulations it is clear that the entry at the port of importation is to be complete, and the duties are to be then and there estimated before any transportation can be allowed. Thus section 1 of the act of 1846, which is the first and principal warehousing act, provides, in terms, that the proper duties are to be ascertained on the due entry of the goods for warehousing, and it is obvious that this is the only safe and proper time and place for ascertaining the same; and such has been the universal practice. Articles 432, 438, 439, and 463 of the general regulations are very full and explicit on this point, and indeed it would be impossible to comply with the statute without such estimate being made, because the bond provided for by the act of 1854 (section 6), and prescribed by article 446 of the regulations, is conditioned among other things for the payment of the duties in a certain contingency, and they are to be ascertained and indorsed on the transportation bond. See also section 4 of chapter 147, Laws 1830 (4 Stat. 410).

Nor can it be doubted that it was the duty of the collector at Ogdensburg, if he found the invoice value less than the true market value by more than ten per cent to assess and levy the penal duty. The statute under which it was levied is section 9 of chapter 298, Acts 1866 (14 Stat. 330), and there are other earlier acts upon the subject, especially section 7 of chapter 80, Acts 1865 (13 Stat. 494), and these laws show that the penal duty is to be assessed as soon as the undervaluation is discovered; and article 439 expressly provides that such additional duty must be ascertained and paid before any withdrawal for transportation can be allowed.

The agreed facts, and the letter from Ogdensburg which was read by consent as part of the case, prove an examination at Ogdensburg, and for aught that appears a due examination there, and by the proper officer, a deputy-collector. Act Aug. 30, 1842, § 22 (5 Stat. 566). Some doubt was suggested whether the collector must not personally act as appraiser at a port where there are no permanent appraisers, but we see no reason why this should be the only function of the collector which he may not perform by deputy. It has been held that the deputy is the substitute for the collector, with the like powers and duties as his principal, so that an oath required by statute to be taken before the collector is well taken before his deputy, without proof of the absence or illness of the principal; and this on an indictment for perjury. U. S. v. Barton [Case No. 14,534]. Much more would this rule apply to a civil case in which it is not shown that the collector was present or capable of acting in the particular case.

No increase of dutiable value having been made at Ogdensburg when the goods were entered, the first question is, whether another deputy of the same collector there could afterwards raise the value upon information derived

from Boston, and without further actual knowledge or examination, and without notice to the importer that the goods were to be appraised anew.

[And we are of opinion that he could not. Although he had made no certificate of his appraisement upon the invoice, yet he had passed the goods, and they had gone out of his jurisdiction, and without saying that the collector might not certify his action nunc pro tunc, nor even that he might not, under some circumstances, and on notice, review his action, yet this certainly must be done in such a way that the rights of all parties should be saved, and must, besides, amount to a new finding, and not a mere formal act done upon hearsay, and without the experience of an independent judgment. It is clear, therefore, that the invoice value was not lawfully raised at Ogdensburg.][2]

The power of a collector to order a reappraisement of goods before they have gone out of the hands of the importer cannot now be doubted. Iasigi v. The Collector, 1 Wall. [68 U. S.] 375. But we are not prepared to say that this can be done on mere hearsay information, and without either a new examination of the goods, or of the books or papers of the importer, and without notice to him. The second appraisement should be made in the same manner and with the same care as the first, and a like regard must be had to the rights of the importer. We must hold this reappraisal invalid.

The next question is, whether the addition to the invoice value could be properly made by the appraisers here, and whether thereupon the defendant could and did lawfully assess and levy the additional duty. The regulations of the treasury department, already referred to, and especially articles 460 and 463, provide that a copy of the entry for transportation and of the invoice shall be sent to the collector here, and that he shall cause the goods to be again appraised in the same manner as if on an importation from a foreign port, and if it should appear by the report of the appraisers that the appraisement at the original port was too low, or the classification was improper, the collector shall call upon the appraisers for a statement of the grounds of their opinion, and transmit the same to the department for its consideration, and such investigation as may be necessary. These rules were not followed in this case. Instead of reporting to the department, the defendant reported to the collector at Ogdensburg, and upon his assenting to the addition, proceeded to assess the duty. We understand that this action of the defendant was in accordance with the practice at this port, and very possibly at others in like cases, but we have not been informed of any general regulation of the department which authorized it. Whether the secretary of the treasury could, by a general rule, lawfully authorize an assessment of duties upon the basis

of an appraisement made at the port of entry for rewarehousing may admit of great doubt. We have seen no law which warrants any such proceeding, but on the contrary all the statutes appear to contemplate that the appraisal shall be at the port of original entry. It may be highly useful that a second appraisement should be made as a guard against fraud, and to secure, through the supervision of the department, that most important result, uniformity of action at all the ports of entry; and such we suppose to be the true object of the general regulations above referred to; but that the new appraisement can supersede or supplement the old in the action of the collector in the particular case, in the absence of fraud or collusion, is a proposition that we should be obliged to examine with great care, if this case required it; but it does not, for the regulations do not purport to authorize the action taken in this case. We have already seen that the collector at Ogdensburg was not authorized to make the addition, in the mode in which he did make it, and it is equally clear that no law or regulation that has been cited authorized the collector here to do so; and we are of opinion, therefore, that the assessment and levy were void, and that the plaintiff is entitled to recover the sum paid, with interest from the day of payment.

Judgment for the plaintiff.